**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUSTO VARGAS,** | : | **CIVIL ACTION NO. 1:25-CV-2328** |
| | : | |
| **Petitioner** | : | **(Judge Neary)** |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN OF FCI-ALLENWOOD,** | : | |
| | : | |
| **Respondent** | : | |

<u>**MEMORANDUM**</u>

This is a habeas corpus case filed pursuant to 28 U.S.C. § 2241 by a federal prisoner in the custody of the United States Bureau of Prisons ("BOP"). The petition will be denied.

## I.    <u>Factual Background & Procedural History</u>

Petitioner Justo Vargas is incarcerated in Allenwood Federal Correctional Institution ("FCI-Allenwood") serving a federal criminal sentence. He filed the instant petition on December 5, 2025. (Doc. 1). Vargas advances two claims for habeas corpus relief: (1) that the BOP is improperly denying him time credits pursuant to the First Step Act ("FSA") that he should have earned for the approximately three months after he was sentenced in federal court but before he was transported to a federal prison to begin serving the sentence; and (2) that the BOP is improperly refusing to apply his FSA time credits towards time in prerelease custody because he is subject to an immigration detainer issued by the United States Department of Homeland Security ("DHS") (Doc. 2).

Respondent responded to the petition on January 1, 2026. (Doc. 8). Respondent advances five arguments in opposition to the petition: (1) that the petition should be dismissed because Vargas failed to exhaust administrative remedies; (2) that Vargas's FSA credits claim should be denied on its merits; (3) that Vargas's claim regarding transfer to prerelease custody is not a cognizable habeas claim; (4) that the court does not have jurisdiction over the claim regarding prerelease custody; and (5) that the claim regarding prerelease custody should be denied on its merits because the BOP properly conducted an individualized assessment of whether Vargas should be transferred to prerelease custody. (Id.) Vargas filed a reply brief in support of his petition on January 20, 2026, making the petition ripe for review. (Doc. 9).

## II.   **Discussion**

### A.   **Exhaustion**

The court begins with respondent's exhaustion argument. Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims. See Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) (citing Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986)); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion allows the agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy." Id. at 761-62. The BOP has a

specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. See 28 C.F.R. §§ 542.10-.19. That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the regional director, and—ultimately—final appeal to the general counsel. Id. §§ 542.13-.15. No administrative remedy is considered fully exhausted until reviewed by the general counsel. Id. § 542.15(a).

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude habeas review. Moscato, 98 F.3d at 761. Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction. Vasquez v. Strada, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Exhaustion is likewise not required when it would be futile. Rose v. Lundy, 455 U.S. 509, 516 n.7 (1982).

In this case, respondent acknowledges that Vargas completed the BOP's administrative remedy process through all stages of review, but argues that his petition should be dismissed for failure to exhaust administrative remedies because he did not wait for a final denial from the BOP's central office before filing this case. (Doc. 8 at 12). Respondent asserts that the appeal was received by the central office on November 13, 2025, and that the central office's response was therefore not due until January 12, 2026, approximately one month after Vargas filed his habeas petition.

3

This argument is unavailing. Respondent asserts that the central office's response was not due until January 12, 2026, but this is incorrect. Under 28 C.F.R. § 542.18, the central office must respond to an appeal "within 40 calendar days," which in this case would require a response no later than December 23, 2025. 28 C.F.R. § 542.18. Respondent's assertion that the response was not due until January 12, 2026 appears to be based on a provision of Section 542.18 allowing the response deadline to be extended by 20 days. Id. To obtain such an extension, however, prison staff must "inform the inmate of this extension in writing." Id. Nothing in the record indicates that the BOP ever informed Vargas that it was extending the deadline for a response to his appeal. Thus, the record shows that the BOP failed to respond to Vargas's appeal within the time allotted by Section 542.18. Under Section 542.18, this constitutes exhaustion of administrative remedies by Vargas. See id. ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level).[1]

---

[1] Although Vargas filed his petition before December 23, 2025 deadline expired, the court will excuse this failure to comply with the procedure because the remedy for such a failure would be dismissal of this petition without prejudice for failure to exhaust administrative remedies. Given that Vargas would be able to immediately refile the petition and point to the BOP's failure to respond to his central office appeal within the time allotted by Section 542.18 to show that he exhausted administrative remedies as explained above, the court finds that simply allowing the instant case to proceed advances the interest of judicial economy and conserves the parties' resources.

## B.    Cognizability and Jurisdiction

The court next considers respondent's arguments that Vargas's claim

regarding transfer to prerelease custody is not a cognizable habeas claim and that

the court does not have jurisdiction over the claim. Transfer of BOP prisoners to

prerelease custody is governed by 18 U.S.C. § 3624 and 18 U.S.C. § 3621. Section

3624 states, in relevant part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The decision whether to transfer an inmate to prerelease

custody, however, is left to the discretion of the BOP. 18 U.S.C. § 3624(c)(4). When

exercising this discretion, the BOP must conduct an individualized assessment of

whether an inmate should be transferred to prerelease custody based on the

following factors:

> **(1)** the resources of the facility contemplated;
> **(2)** the nature and circumstances of the offense;
> **(3)** the history and characteristics of the prisoner;
> **(4)** any statement by the court that imposed the sentence--
>    **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>    **(B)** recommending a type of penal or correctional facility as appropriate; and
> **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Id. § 3621(b); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 247 (3d Cir.

2005).

5

Respondent argues this court does not have jurisdiction to consider Vargas's petition because the decision whether to transfer a prisoner to prerelease custody is left to the BOP's discretion under Sections 3621 and 3624. This court recently rejected an essentially identical jurisdictional argument in Al Haj v. LSCI-Allenwood Warden, No. 1:24-CV-1193, 2025 WL 1115751, at *2-4 (M.D. Pa. Apr. 15, 2025) (Neary, J.). In Al Haj, the court held that it had jurisdiction because Woodall, 432 F.3d at 243-44, and Vasquez, 684 F.3d at 433, "expressly held . . . that challenges to the BOP's denial of a transfer to prerelease custody are cognizable in Section 2241 habeas corpus proceedings." Al Haj, 2025 WL 1115751, at *2.

The court's decision in Al Haj differs from decisions by other courts in this district both before and after the decision, which have generally relied on Cardona v. Bledsoe, 681 F.3d 533 (3d Cir. 2012) to conclude that district courts lack jurisdiction over challenges to BOP denials of transfers to prerelease custody. See Al Haj, 2025 WL 1115751, at *3-4 (distinguishing decision from Miles v. Arviza, No. 3:24-CV-2252, 2025 WL 981870, at *2-5 (M.D. Pa. Apr. 1, 2025); see also, e.g., Demos Watkins v. Warden of FCI-Lewisburg, No. 1:26-CV-138, 2026 WL 192486, at *4 (M.D. Pa. Jan. 26, 2026) (Wilson, J.) (disagreeing with Al Haj, concluding that the court lacks jurisdiction based on Cardona and Miles line of cases, and collecting other cases post-Al Haj reaching the same conclusion).

This court continues to agree with its earlier reasoning in Al Haj and finds that Woodall and Vasquez, rather than Cardona, are the controlling precedent on the jurisdictional question. The court accordingly concludes that it has jurisdiction

to consider Vargas's claim and that the claim is cognizable for the reasons explained in Al Haj, 2025 WL 1115751, at *2-4.

### C.    FSA Claim – Merits

On the merits, Vargas first argues that he should be given FSA time credits for the time between the date of his sentencing and the date he was transferred to a federal prison to serve the sentence.

The FSA allows eligible inmates who successfully complete "evidence-based recidivism reduction programs" ("EBRRs") or productive activities ("PAs") to receive earned time credits to be applied toward time in pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). An inmate may earn ten days of credit for every thirty days of successful participation. Id. Eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn an additional five days of credit for every thirty days of successful participation. Id.

Vargas's claim centers on when he could begin earning FSA time credits. The relevant subsection of the FSA states that a prisoner "may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed . . . during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii). The cross-referenced subsection at 18 U.S.C. § 3585(a) states that a sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the

7

official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

Applying these statutes, the BOP has issued a regulation which states that "[a]n

eligible inmate begins earning FSA Time Credits after the inmate's term of

imprisonment commences (the date the inmate arrives or voluntarily surrenders at

the designated Bureau facility where the sentence will be served)." 28 C.F.R. §

523.42(a).

Vargas argues that the BOP's regulation is contrary to the plain language of

the statute and that the statute requires that he be given time credits beginning on

the date of his sentencing. (Doc. 2 at 3-5). Respondent argues that Vargas is not

entitled to habeas corpus relief because, regardless of whether he could be deemed

eligible to earn FSA time credits for the disputed period of approximately three

months between the date of his sentencing and his placement in a prison, he has

not shown that he actually completed any programming that would earn him time

credits during that period. (Doc. 8 at 16).

The court agrees with respondent. Although the BOP's regulation appears to

be somewhat narrower than the statute by eliminating the language that an inmate

may receive time credits when he is "received in custody awaiting transportation to"

the prison at which he is slated to serve his sentence, compare 18 U.S.C. § 3585(a)

with 28 C.F.R. § 523.42(a),[2] this court does not need to analyze this issue:

regardless of whether the regulation conflicts with the statute, Vargas has not

---

[2] At least one court in this circuit has found that the regulation is invalid based on this conflict. See Heath v. Knight, No. 22-CV-7270, 2024 WL 5198863, at *5 (D.N.J. Dec. 23, 2024).

shown that he completed any programs during the relevant three-month period between the date of his sentencing and his arrival in a federal prison. <u>See</u> (Docs. 1, 2, 9); <u>see also, e.g.</u>, <u>Patel v. Greene</u>, No. 3:25-CV-2483, 2026 WL 907589, at *2 (M.D. Pa. Apr. 2, 2026) (declining to decide whether 28 C.F.R. § 523.42(a) conflicts with 18 U.S.C. § 3585(a) because petitioner had not shown that he had participated in any programming that would entitle him to FSA credits during the relevant period); <u>Nwafor v. Warden, FCI Fort Dix</u>, No. 25-CV-4631, 2025 WL 2505595, at *2 (D.N.J. Sept. 2, 2025) (same). Accordingly, this claim for habeas relief will be denied.

### D.    Prerelease Custody Claim - Merits

Federal law requires the BOP to consider inmates for prerelease custody, 18 U.S.C. § 3624(c)(1), and in doing so, it must make an individualized determination based on consideration of:

**(1)** the resources of the facility contemplated;
**(2)** the nature and circumstances of the offense;
**(3)** the history and characteristics of the prisoner;
**(4)** any statement by the court that imposed the sentence--
   **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
   **(B)** recommending a type of penal or correctional facility as appropriate; and
**(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

28 U.S.C. § 3621(b); <u>Woodall</u>, 432 F.3d at 247.

In this case, the BOP conducted the assessment required by Section 3621(b) and determined that Vargas should not be transferred to prerelease custody. (Doc. 8-8 at 4). The BOP considered the five factors required to be considered under Section 3621(b) and noted that Vargas's immigration detainer was an additional

9

factor weighing against placing him in prerelease custody. (Id.) Having reviewed this assessment, the court finds that the BOP has complied with Section 3621(b) because it is clear that it has considered all five factors that must be considered. Vargas's habeas claim will accordingly be denied.

This court's decision in Al Haj, 2025 WL 1115751, at *5-6, does not compel a different result. In Al Haj, the BOP categorically denied the petitioner's request for transfer to prerelease custody based on the petitioner's immigration detainer, without considering the five factors enumerated in Section 3621(b). Id. at *5. The court held that this was improper under Section 3621(b) and Woodall, 432 F.3d at 244, because it amounted to a categorical bar rather than an individualized determination. Al Haj, 2025 WL 1115751, at *5. The court accordingly granted the habeas corpus petition and required the BOP to conduct an individualized assessment that included consideration of the five factors enumerated in Section 3621(b). Id. In doing so, however, the court emphasized that its holding "shall not be construed as a holding that the BOP is barred from considering Al Haj's immigration detainer when it makes the individualized determination of whether he should be transferred to prerelease custody." Id. at *5 n.3. "The question whether the BOP may consider additional factors," the court explained, "is separate and unrelated to the question whether it can ignore altogether the very factors delineated by Congress in the governing statute itself." Id. (quoting Woodall, 432 F.3d at 247.

10

In this case, it is clear that the BOP considered the five factors enumerated in Section 3621(b) in denying Vargas's claim seeking transfer to prerelease custody and considered Vargas's immigration detainer as an additional factor in its analysis. (See Doc. 8-8 at 4 (noting limited bed space available for prerelease custody, nature of Vargas's criminal offenses, his programming history, and the absence of any pertinent recommendation from his sentencing court before additionally noting that BOP guidance suggests inmates with immigration detainers should not be placed in prerelease custody)). This case is therefore distinguishable from Al Haj because the immigration detainer was simply an additional factor considered in the BOP's Section 3621(b) rather than a controlling element that overrode the five-factor analysis. Thus, because the BOP has complied with Section 3621(b), Vargas's habeas claim will be denied.

## III.   Conclusion

The petition for writ of habeas corpus is denied. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    April 22, 2026